```
FILED              RECEIVED
ENTERED            SERVED ON
          COUNSEL/PARTIES OF RECORD

         OCT 27, 2022

       CLERK US DISTRICT COURT
         DISTRICT OF NEVADA
BY:                      DEPUTY
```

1  ALBERT B. SAMBAT (CABN 236472)
   CHRISTOPHER J. CARLBERG (CABN 269242)
2  MIKAL J. CONDON (CABN 229208)
   U.S. Department of Justice
3  Antitrust Division
   450 Golden Gate Avenue
4  Box 36046, Room 10-0101
   San Francisco, CA 941092
5  Tel: 415.934.5300 / Fax: 415.934.5399
   albert.sambat@usdoj.gov
6

7  JASON M. FRIERSON
   United States Attorney
8  Nevada Bar No. 7709
   ERIC C. SCHMALE
9  Assistant United States Attorney
   501 Las Vegas Boulevard South, Suite 1100
10 Las Vegas, Nevada 89101
   Tel: 702.388.6336 / Fax: 702.388.6418
11 eric.schmale@usdoj.gov
   *Attorneys for the United States*

12

13                    **UNITED STATES DISTRICT COURT**
                           **DISTRICT OF NEVADA**
14

15
   UNITED STATES OF AMERICA,              Case No.: 2:21-cr-00098-RFB-BNW
16
                  Plaintiff,
17                                        **PLEA AGREEMENT**
           v.
18

19
   VDA OC, LLC, formerly ADVANTAGE ON
20 CALL, LLC,

21                Defendant.

22

23

24

**PLEA AGREEMENT**

The United States Department of Justice, Antitrust Division and the United States Attorney's Office for the District of Nevada ("United States") and VDA OC, LLC, formerly Advantage On Call, LLC ("Defendant"), a limited liability company organized under the laws of Ohio, enter into this Plea Agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."), the terms and conditions of which are as follows:

<u>Rights of Defendant</u>

1. The Defendant understands its rights:

    (a) to be represented by an attorney;

    (b) to plead not guilty to any criminal charge brought against it;

    (c) to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty;

    (d) to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

    (e) to appeal its conviction if it is found guilty; and

    (f) to appeal the imposition of sentence against it.

<u>Agreement to Plead Guilty and Waive Certain Rights</u>

2. The Defendant knowingly and voluntarily waives:

    (a) the rights set out in subparagraphs 1(b)-(d) above;

    (b) the right to file any appeal or collateral attack that challenges its conviction, including but not limited to any appeal or collateral attack raising any argument that (1) the statute to which it is pleading guilty is unconstitutional or (2) the admitted conduct does not fall within the scope of such statute; and

(c)    the right to file any appeal or collateral attack, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court, regardless of how the sentence is determined by the Court, or an appeal or collateral attack challenging any order of restitution.  This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b).

Nothing in this paragraph, however, will act as a bar to the Defendant's perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel.  The Defendant agrees that there is currently no known evidence of ineffective assistance of counsel.  The Defendant will plead guilty to the one-count Indictment filed in this case on March 30, 2021 (Dkt. 1).  The Indictment charges the Defendant with knowingly entering into and engaging in a conspiracy to suppress and eliminate competition for the services of nurses in the District of Nevada and elsewhere by agreeing to allocate nurses assigned to the Clark County School District ("CCSD") and to fix the wages of those nurses, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

3.    The Defendant will plead guilty to the criminal charge described in Paragraph 2 under the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

Factual Basis for Offense Charged

4.    Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts beyond a reasonable doubt:

(a)    For purposes of this Plea Agreement, the "relevant period" is that period beginning in or around October 21, 2016 and continuing until in or around July 1, 2017. During the relevant period, the Defendant was a limited liability company organized and existing under the laws of Ohio, with its principal place of business in West Chester,

Ohio, and employed 50 or more individuals. During the relevant period, the Defendant provided contract healthcare staffing services from its branch office in Las Vegas, Nevada. During the relevant period, the volume of commerce corresponding to the wages paid to the affected nurses was $218,016.

(b) During the relevant period, the Defendant, through one of its employees, participated in a conspiracy with another contract healthcare staffing firm to suppress and eliminate competition for the services of nurses by agreeing to allocate nurses and fix the wages of those nurses. In furtherance of the conspiracy, an employee of the Defendant engaged in a conversation and an email communication with a competitor. During this conversation and email communication, which both occurred on October 21, 2016, an agreement was reached to (1) allocate nurses between the Defendant and the competitor by not recruiting or hiring each other's nurses, and (2) fix the wages of those nurses by refraining from raising wages of those nurses.

(c) During the relevant period, the business activities of the Defendant and its co-conspirator that are the subject of the Indictment were within the flow of interstate trade and commerce. The payments made to and from the Defendant for the services rendered by its nurses traveled in interstate trade and commerce. The payments that CCSD made to the Defendant for the services rendered by its employee nurses included federal funding from Medicaid.

(d) The conspiratorial conversation and communication described above occurred in the District of Nevada.

<u>Elements of the Offense</u>

5. The elements of the charged offense to which the defendant is pleading guilty are that:

  (a) the conspiracy described in the Indictment existed at or about the time alleged;

  (b) the defendant knowingly became a member of the conspiracy; and

  (c) the conspiracy described in the Indictment occurred within the flow of interstate commerce in goods or services.

Possible Maximum Sentence

6. The Defendant understands that the statutory maximum penalty which may be imposed against it on conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

  (a) $100 million (15 U.S.C. § 1);

  (b) twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

  (c) twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7. In addition, the Defendant understands that:

  (a) under §8D1.2(a)(1) of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

  (b) under U.S.S.G. §8B1.1 or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order the Defendant to pay restitution to the victims of the offense; and

  (c) under 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the Defendant to pay a $400 special assessment upon conviction for the charged crime.

//

//

<u>Sentencing Guidelines</u>

8. The Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed. The parties agree there is no *ex post facto* issue in the Court's considering the November 1, 2021 Guidelines Manual in determining and imposing sentence. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence. The Defendant understands that the Court will make Guidelines determinations by applying a standard of preponderance of the evidence. The Defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, the sentence must be appropriate based on consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

<u>Sentencing Agreement</u>

9. The United States and the Defendant agree that the following Sentencing Guidelines calculation is correct based on a total volume of commerce attributable to the defendant of $218,016:

//
//
//
//
//
//

| | | |
|---|---|---|
| (a) **Base Fine:** The base fine is 20% of the volume of affected commerce of $218,016 (§2R1.1(d)(1) and §8C2.4(b)): | | **$43,603** |
| (b) **Culpability Score** | | |
| i. **Base,** §8C2.5(a): | | **5** |
| ii. **Involvement in or Tolerance of Criminal Activity,** §8C2.5(b)(4): | | **+2** |
| iii. **Acceptance of Responsibility,** §8C2.5(g)(3): | | **-1** |
| (c) **Total Culpability Score:** | | **6** |
| (d) **Minimum and Maximum Multipliers,** §8C2.6: | | **1.2 – 2.4** |
| (e) **Minimum and Maximum Fine Range,** §8C2.7: | | **$52,324 – $104,647** |

10. Under Fed. R. Crim. P. 11(c)(1)(C), the United States and the Defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the Defendant to pay to the United States a criminal fine of $62,000, payable in full before the 15th day after the date of judgment, and restitution in the amount of $72,000 under 18 U.S.C. § 3663(a)(3), payable in full before the 15th day after the date of judgment ("Recommended Sentence").  The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure under U.S.S.G. §5K2.0.  The parties agree not to seek at the sentencing hearing any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement.  The parties further agree that the Recommended Sentence is appropriate.

    (a)    The Defendant understands that the Court will order it to pay a $400 special assessment, under 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

      (b)      Both parties will recommend that no term of probation be imposed.

      (c)      The United States and the Defendant jointly submit that this Plea Agreement, together with the record that will be created by the United States and the Defendant at the plea and sentencing hearings, will provide sufficient information concerning the Defendant, the crime charged in this case, and the Defendant's role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and Defendant agree to request jointly that the Court accept the Defendant's guilty plea and impose sentence in the same hearing, based on the record provided by the Defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii) and U.S.S.G. §6A1.1. The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

11.    The United States and the Defendant understand that the Court retains complete discretion to accept or reject the Recommended Sentence.

      (a)      If the Court does not accept the Recommended Sentence, the United States and the Defendant agree that this Plea Agreement, except for subparagraph 12(b) below, will be rendered void.

      (b)      If the Court does not accept the recommended sentence, the Defendant will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)(2)(A)). If the Defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government will not be admissible against the Defendant in any

criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410.  In addition, the Defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 13 of this Plea Agreement will be tolled for the period between the date of signature of this Plea Agreement and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of signature of this Plea Agreement, whichever period is greater.

12. The Defendant understands that this Plea Agreement is voidable by the United States if the Defendant fails to pay the restitution as required by this Plea Agreement.  The Defendant further agrees that it will not seek to discharge any restitution obligation or any part thereof in any bankruptcy proceeding.

### Government's Agreement

13. Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the Recommended Sentence, the United States agrees that it will not bring further criminal charges against the Defendant for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving contract healthcare staffing services in Nevada.  The nonprosecution terms of this paragraph do not apply to (a) any acts of subornation of perjury (18 U.S.C. § 1622), making a false statement (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), contempt (18 U.S.C. §§ 401-02), or conspiracy to commit such offenses; (b) civil matters of any kind; (c) any violation of the federal tax or securities laws or conspiracy to commit such offenses; or (d) any crime of violence.

14. The Defendant understands that it may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice, Antitrust

Division, based on the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls what action, if any, other agencies may take. The Defendant nevertheless affirms that it wants to plead guilty regardless of any suspension or debarment consequences of its plea.

### Representation by Counsel

15. The Defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. The Defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge, any possible defenses to the charge, and the nature and range of possible sentences.

### Voluntary Plea

16. The Defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the Defendant as to whether the Court will accept or reject the recommendations in this Plea Agreement.

### Breach of Plea Agreement

17. If the Defendant violates any provision of this Plea Agreement, the United States will notify counsel for the Defendant in writing by personal or overnight delivery or email and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the Defendant will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The Defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the Defendant relating to the

conduct described in Paragraph 4 or relating to conduct known to the United States before the date of the signing of this Agreement that is not time-barred by the applicable statute of limitations on the Effective Date of this Agreement, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

18. The Defendant understands and agrees that in any further prosecution of it resulting from the release of the United States from its obligations under this Plea Agreement because of the Defendant's violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it.  In addition, the Defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

<u>Public Statements by the Defendant</u>

19. The Defendant expressly agrees that it will not, through current or future attorneys, directors, officers, employees, agents, or any other person authorized by the Defendant to speak on its behalf, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above or the facts described in the Indictment or Factual Basis section of this Plea Agreement.  Any such contradictory statement will, subject to the cure rights of the Defendant described below, constitute a violation of this Plea Agreement, and the Defendant thereafter will be subject to prosecution.  The decision whether any public statement by any such person contradicting a fact contained in the Indictment or Factual Basis section of this Plea Agreement was made on behalf of the Defendant for the

purpose of determining whether it has violated this Plea Agreement will be at the sole discretion of the United States.  If the United States determines that a public statement by any such person contradicts in whole or in part a statement contained in the Indictment or Factual Basis section of this Plea Agreement, the United States shall so notify the Defendant, and the Defendant may avoid a violation of this Plea Agreement by publicly repudiating such statement(s) within five (5) business days after notification.  The Defendant will be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Indictment and the Factual Basis section of this Plea Agreement provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Indictment or Factual Basis section of this Plea Agreement.  This paragraph does not apply to any statement made by any current or future director, officer, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

20. The Defendant agrees that if it, its parent, and/or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the United States to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the United States and the Defendant; and (b) whether the United States has any objection to the release or proposed statements.

### Entirety of Agreement

21. This Plea Agreement constitutes the entire agreement between the United States and the Defendant concerning the disposition of the criminal charge in this case.  This Plea Agreement cannot be modified except in writing, signed by the United States and the Defendant.

22. The undersigned is authorized to enter this Plea Agreement on behalf of the

Defendant as evidenced by the Appointment of Agent filing with the Ohio Secretary of State attached to, and incorporated by reference in, this Plea Agreement.

23. A PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

Respectfully submitted,

BY: *J. Stephen Herbert* (signature)
J. STEPHEN HERBERT
Statutory Agent
VDA OC, LLC

Dated: September 28, 2022

BY: *Chris Carlberg* (signature)
ALBERT B. SAMBAT
CHRISTOPHER J. CARLBERG
MIKAL J. CONDON
U.S. Department of Justice
Antitrust Division

Dated: September 28, 2022

BY: *Carole Schmitt Rendon* (signature)
CAROLE S. RENDON
MARY PAT BROGAN
BAKER & HOSTETLER LLP
Counsel for VDA OC, LLC

Dated: September 28, 2022

BY: (signature)
ERIC C. SCHMALE
Assistant United States Attorney

Dated: September 29, 2022

# Atttachment A



| DATE: | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|---|---|---|---|---|---|---|---|
| 01/22/2010 | 201002100750 | ARTICLES OF ORGNZTN/DOM. PROFIT LIM.LIAB. CO. (LCP) | 125.00 | .00 | .00 | .00 | .00 |

**Receipt**
This is not a bill. Please do not remit payment.

COOLIDGE, WALL CO, LPA
33 W. FIRST ST., SUITE 600
ATTN REBECCA COLLIER
DAYTON, OH 45402

# STATE OF OHIO
## CERTIFICATE
**Ohio Secretary of State, Jennifer Brunner**

1908446

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**ADVANTAGEALLIED, LLC**

and, that said business records show the filing and recording of:

Document(s):
**ARTICLES OF ORGNZTN/DOM. PROFIT LIM.LIAB. CO.**

Document No(s):
**201002100750**



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of the Secretary of State at Columbus, Ohio this 14th day of January, A.D. 2010.

*Jennifer Brunner*

Ohio Secretary of State

From: 937 223 6705   Page: 3/5   Date: 1/14/2010 10:43:35 AM

**Form 533A Prescribed by the:**
**Ohio Secretary of State**

Central Ohio: (614) 466-3910
Toll Free: (877) SOS-FILE (767-3453)

www.sos.state.oh.us
Busserv@sos.state.oh.us

**Expedite this form: (select one)**
Mail form to one of the following:

○ Expedite   PO Box 1390
             Columbus, OH 43216
*** Requires an additional fee of $100 ***

◉ Non Expedite   PO Box 670
                 Columbus, OH 43216

2010 JAN 14 PM 4:21

# ARTICLES OF ORGANIZATION FOR A DOMESTIC LIMITED LIABILITY COMPANY
**Filing Fee: $125.00**

**(CHECK ONLY ONE (1) BOX)**

| (1) ☑ Articles of Organization for Domestic For-Profit Limited Liability Company (115-LCA) ORC 1705 | (2) ☐ Articles of Organization for Domestic Nonprofit Limited Liability Company (115-LCA) ORC 1705 |
|---|---|

**Name of limited liability company**

AdvantageAllied, LLC

Name must include one of the following words or abbreviations: "limited liability company," "limited," "LLC," "L.L.C.," "ltd.," "or "ltd"

**Effective Date** (Optional)   _____ mm/dd/yyyy   (The legal existence of the limited liability company begins upon the filing of the articles or on a later date specified that is not more than ninety days after filing)

**This limited liability company shall exist for**   a perpetual term
(Optional)                                            Period of Existence

**Purpose** (Optional)   To engage in any lawful business permitted by Chapter 1705 of the Ohio

Revised Code or the laws of any jurisdiction in which it may do business. It

shall have the authority to do all things necessary to accomplish this purpose

and operate its business.

☐ **Check here if additional provisions are attached**

Page 1 of 5   Last Revised: 8/21/08

From: 937 223 6705    Page: 4/5    Date: 1/14/2010 10:43:35 AM

# ORIGINAL APPOINTMENT OF AGENT

The undersigned authorized member(s), manager(s) or representative(s) of

AdvantageAllied, LLC
Name of Limited Liability Company

hereby appoint the following to be Statutory Agent upon whom any process, notice or demand required or permitted by statute to be served upon the limited liability company may be served. The name and address of the agent is

J. Stephen Herbert
Name of Agent

33 W. First Street, Suite 600
Mailing Address

| Dayton | Ohio | 45402-1289 |
|---|---|---|
| City | State | Zip Code |

☐ If the agent is an individual and using a P.O. Box, check this box to certify the agent is an Ohio resident.

## ACCEPTANCE OF APPOINTMENT

The undersigned, named herein as the statutory agent for

AdvantageAllied, LLC
Name of Limited Liability Company

hereby acknowledges and accepts the appointment of agent for said limited liability company

*[signature]*
Agent's Signature

From: 937 223 6705     Page: 5/5     Date: 1/14/2010 10:43:36 AM

By signing and submitting this form to the Ohio Secretary of State, the undersigned hereby certifies that he or she has the requisite authority to execute this document on behalf of the limited liability company identified above.

**REQUIRED**
Articles and original appointment of agent must be authenticated (**signed**) by a member, manager or other representative.

*J. Stephen Herbert* (signature)    1/6/2010
Signature                            Date

J. Stephen Herbert
Print Name

_____    _____
Signature                     Date

_____
Print Name

_____    _____
Signature                     Date

_____
Print Name

(See Instructions Below)